**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE: | CASE NO. 15-06006 (EAG) |
| JOSE RAFAEL VELEZ OVALLES, | |
| DEBTOR. | |
| HERBALBERT EMIL COFRESI ORTIZ, | ADVERSARY NO. 15-00270 (EAG) |
| PLAINTIFF, | |
| v. | |
| JOSE RAFAEL VELEZ OVALLES, | |
| DEFENDANT. | FILED & ENTERED ON 06/18/2020 |

**OPINION AND ORDER**

Debtor/defendant Jose Rafael Velez Ovalles ("Mr. Velez," "defendant," or "debtor") and plaintiff Herbalbert Emil Cofresi Ortiz ("Mr. Cofresi" or "plaintiff") cross-moved for summary judgment in an adversary proceeding to except from discharge Mr. Cofresi's claim based on a lawsuit he filed in local court. For the reasons stated below, the court grants Mr. Velez's motion and denies Mr. Cofresi's.

**I.      Jurisdiction.**

This court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a), Local Civil Rule 83K(a), and the General Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of Puerto Rico dated July 19,

1984 (Torruella, C.J.).[1]  This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(I) ("determinations as to the dischargeability of particular debts" are core proceedings).

**II.      Procedural Background.**

Mr. Velez filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code on August 6, 2015.  (Bankr. Dkt. No. 1.)  The debtor listed Mr. Cofresi's claim in schedule F in the amount of $4,000,000.00 corresponding to a tort action filed in local court on December 30, 2014.  (Bankr. Dkt. No. 1 at p. 15.)  On September 15, 2015, Mr. Cofresi filed a proof of claim in the amount of $4,000,000.00, wholly unsecured, concerning the lawsuit.  (Claims Register No. 2-1.)  The proof of claim attaches a copy of the complaint filed in local court, in which Mr. Cofresi alleges that he was severely injured when Mr. Velez lost control of a vehicle and collided with several individuals and parked vehicles.  Id.  The court has since confirmed Mr. Velez's chapter 13 plan.  (Bankr. Dkt. Nos. 104 & 133.)

On November 16, 2015, Mr. Cofresi filed an adversary complaint against the debtor seeking to except from discharge under section 1328(a)(4) any damages awarded to him in the local court lawsuit.  (Adv. Dkt. No. 1.)  The debtor answered the adversary complaint on December 9, 2015.  (Adv. Dkt. No. 9.)  This court subsequently modified the automatic stay to enable the local court to proceed to judgment and stayed the adversary proceeding pending the resolution of that litigation.  (Bankr. Dkt. No. 67; Adv. Dkt. No. 11.)

---

[1]Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§" refer to Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended.  All references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure, and all references to "Rule" are to the Federal Rules of Civil Procedure.  All references to "Local Bankruptcy Rule" are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Puerto Rico.  And all references to "Local Civil Rule" are to the Local Rules of Civil Practice of the United States District Court for the District of Puerto Rico.

On February 5, 2018, the debtor moved for summary judgment in the adversary proceeding, informing that the local court had entered judgment on November 27, 2017 in favor of the plaintiff, but contending that the local court's ruling did not meet the standard for an exception from discharge under section 1328(a)(4).  (Adv. Dkt. No. 15.)  On April 6, 2018, the plaintiff Mr. Cofresi filed an opposition and cross motion for summary judgment.  (Adv. Dkt. Nos. 23 & 24.)  The debtor replied on June 7, 2018, and subsequently submitted to the court a certified translation in English of the local court judgment.  (Adv. Dkt. Nos. 28 & 32.)

On October 10, 2019, the court heard oral arguments on the cross motions for summary judgment.  (Adv. Dkt. Nos. 47 & 48.)  At the hearing's conclusion, the court ordered Mr. Cofresi to supplement the statement of uncontested facts under Rule 56(e) to provide support for his assertions of fact regarding the circumstances of the incident, "such as the road conditions at the time of the incident, as well as any facts regarding aggravating factors that would support a finding that the defendant acted with malice."  Id.  Mr. Cofresi filed his supplement on November 14, 2019, and Mr. Velez filed his response on February 7, 2020.  (Adv. Dkt. Nos. 50 & 58.)

## III.    Uncontested Facts.

The following facts are uncontested pursuant to Rule 56 and Local Civil Rule 56, made applicable to these proceedings by Bankruptcy Rules 9014(c) and 7056 and Local Bankruptcy Rules 1001-1(b) and (d).

On December 30, 2014, Mr. Cofresi and several family members filed suit against the debtor and others in the Puerto Rico Court of First Instance, Ponce Ward.  The suit sought to recover damages, under Puerto Rico's tort statute, suffered as a result of a collision caused

3

when Mr. Velez lost control of a vehicle and struck several parked cars and pedestrians, including the plaintiff, who were attending to a broken down vehicle on the shoulder of the road.

The local court issued a judgment in favor of Mr. Cofresi and his family members on November 27, 2017, awarding him the sum of $1,200,000.00 for physical and emotional damages, plus $2,401,600.00 in lost wages.[2] (Adv. Dkt. No. 32-1 at pp. 17-22.) In so doing, the court first noted that the parties had stipulated as to the facts of the case "exactly as alleged in the complaint" and to the defendant's "gross and reckless negligence." (Adv. Dkt. No. 32-1 at pp. 1-2.)

The local court judgment made the following findings of fact as to the incident, which this court adopts in full:

> On January 4, 2014, at around 12:20 a.m., [Mr. Velez], driving the 2012 Honda Civic vehicle, impacted another Honda vehicle that was parked in the shoulder of the road with mechanical trouble. With the force of the impact, several pedestrians who were providing assistance to the vehicle with mechanical problems were injured, among them [Mr. Cofresi].

(Adv. Dkt. No. 32-1 at p. 3.) The complaint provides several other details, which this court also adopts as facts, namely that per the accident report, Mr. Velez "was driving at a speed that did not allow him to have good control and command of the steering wheel" and that the vehicle he was driving was operating with a spare tire. (Adv. Dkt. No. 22 at p. 12.) The complaint also states:

---

[2] At the time the judgment was entered, the local case was stayed as to codefendant Caridad Ovalles de Velez, the owner of the vehicle Mr. Velez was driving, due to her having filed for bankruptcy. (Adv. Dkt. No. 32-1 at p. 2; see Bankr. Case No. 15-05999 (EAG)).

4

[d]ue to the manner and speed co-defendant [Mr. Velez] was driving the vehicle, the car went off the main roadway, collided against and dragged three (3) vehicles that were parked in the emergency stopping lane, trapping co-plaintiff [Mr. Cofresi], collided against the security railing on the left side of the road, and turned over.

 (Adv. Dkt. No. 22 at p. 13.)  According to one of the injured pedestrians and a tow truck operator who witnessed the incident, driving conditions at the time in question were good: the road was dry, the traffic was light, and the vehicles stopped in the emergency lane were well illuminated by the highway's lamp posts.  (Adv. Dkt. No. 50 at pp. 2-3.)  The road leading up to the place of impact is a long straightaway.  (Adv. Dkt. No. 50 at p. 4.)  Mr. Velez admitted at the scene of the incident that he had fallen asleep behind the wheel.  (Adv. Dkt. No. 50 at p. 2.)

The 25-year-old Mr. Cofresi suffered serious injuries as a result of the incident, including the amputation of his right leg.  (Adv. Dkt. No. 22 at pp. 15-17; Adv. Dkt. No. 50 at p. 3.)  Mr. Cofresi was hospitalized for more than five months and endured a number of surgical procedures and life-threatening complications.  Id.  Following his release from the hospital, Mr. Cofresi continues to receive various treatments and therapies and has been unable to live on his own.  (Adv. Dkt. No. 22 at pp. 20-23.)

**IV.     Summary Judgment Standard**.

The standard for summary judgment is well-known.  Pursuant to Rule 56, made applicable to these proceedings by Bankruptcy Rules 7056 and 9014(c), summary judgment is available "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4 (1st Cir. 2010).  The moving party bears

the burden of showing that "no genuine issue exists as to any material fact" and that he is "entitled to judgment as a matter of law." Vega-Rodríguez v. P.R. Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

Once a properly supported motion has been presented before the court, the opposing party "can shut down the machinery only by showing that a trial-worthy issue exists" that would warrant the court's denial of the motion for summary judgment. McCarthy v. Northwest Airlines, 56 F.3d 313, 315 (1st Cir. 1995). For issues where the opposing party bears the ultimate burden of proof, that party cannot merely "rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." Id. However, not every factual dispute is sufficient to frustrate summary judgment; the contested fact must be material and the dispute over it must be genuine. Id. An issue is "genuine" if it could be resolved in favor of either party. A fact is "material" if it is potentially outcome-determinative. See Calero-Cerezo v. United States DOJ, 355 F.3d 6, 19 (1st Cir. 2004).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (citations omitted). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted). However, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood (no matter how reasonable those ideas may be) . . . ." Greenburg v. P.R. Mar.

Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987); see also Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 677 (1st Cir. 1996) (reversing summary judgment and emphasizing that "determinations of motive and intent . . . are questions better suited for the jury.") (quoting Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 34 (1st Cir. 1990)).

"Cross-motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Adria Int'l Grp., Inc. v. Ferre Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001). Thus, "a court must rule on each motion independently, deciding in each instance whether the moving party has met its burden under Rule 56." United States v. 100,000 in United States Currency, 305 F. Supp. 3d 238, 245 (D. Mass. 2018) (quoting Dan Barclay, Inc. v. Stewart & Stevenson Servs., Inc., 761 F. Supp. 194, 197-98 (D. Mass. 1991).

"The [trial] court is freed from the usual constraints that attend the adjudication of summary judgment motions" when "'the basic dispute between the parties concerns the factual inferences . . . that one might draw from the more basic facts to which the parties have drawn the court's attention,' where 'there are no significant disagreements about those basic facts,' and where neither party has 'sought to introduce additional factual evidence or asked to present witnesses.'" Equal Employment Opportunity Comm'n v. Steamship Clerks Union 1066, 48 F.3d 594, 603 (1st Cir. 1995) (quoting Federacion de Empleados del Tribunal Gen. de Justicia v. Torres, 747 F.2d 35, 36 (1st Cir. 1984)). In those circumstances, "[t]he court may then engage in a certain amount of differential factfinding, including the sifting of inferences." Id.

## V.    Applicable Law.

Generally, a chapter 13 debtor receives a discharge of "all debts provided for by the plan or disallowed under section 502" upon the completion of all plan payments. 11 U.S.C. § 1328(a). Certain types of debts, however, are excepted from discharge. 11 U.S.C. § 1328(a)(1)-(4). As relevant here, Section 1328(a)(4) excepts from discharge any debt "for restitution, or damages, awarded in a civil action against the debtor as a result of willful or malicious injury by the debtor that caused personal injury to an individual or the death of an individual." 11 U.S.C. § 1328(a)(4). The requisite standard of proof needed to establish an exception to discharge under section 1328(a)(4) is the preponderance of the evidence. Weinke v. Hall (In re Hall), 2016 Bankr. LEXIS 4663, at *4 (Bankr. N.D. Ind. Aug. 19, 2016) (citing Grogan v. Garner, 498 U.S. 279, 285, 111 S.Ct. 654, 658, 112 L.Ed. 2d 755, 767 (1991)).

"Awarded"

At the outset, while some courts have read "awarded" in section 1328(a)(4) to limit the applicability of this exception to discharge only to cases where a judgment was entered prepetition, see, e.g., Parsons v. Byrd (In re Byrd), 388 B.R. 875, 877 (Bankr. C.D. Ill. 2007), this court finds more persuasive the reasoning in Waag v. Permann (In re Waag), 418 B.R. 373, 381 (B.A.P. 9th Cir. 2009). In finding that "Section 1328(a)(4) does not require, explicitly or implicitly, a prepetition judgment," the Waag court held:

> [e]ven if the language [of the statute] were not plain and clear, we will adhere to the Ninth Circuit's guidance in Hudson to avoid an absurd result: a race to the courthouse in which a willful or malicious tortfeasor could eliminate an otherwise nondischargeable debt simply by filing a chapter 13 petition prior to entry of judgment. Two victims, otherwise similarly situated, could end up with dissimilar results, based simply on the timing of the entry of their respective judgments.

8

Waag v. Permann (In re Waag), 418 B.R. 373, 381 (B.A.P. 9th Cir. 2009); see Plys v. Ang (In re Ang), 589 B.R. 165, 181 (Bankr. S.D. Cal. 2018) (collecting cases).

In any event, here this court, in effect, already addressed the issue during the initial status conference when it held the adversary proceeding in abeyance pending the resolution of the local court litigation. (Adv. Dkt. No. 11.)

"Personal Injury"

Turning to the meaning of "personal injury to an individual or the death of an individual" under section 1328(a)(4), while it is clear that this language excludes debts arising from injuries to property, courts are in disagreement as to whether "personal injury" "(1) refers solely to personal bodily injury; (2) includes nonphysical injury but not business or financial injuries; or (3) includes all injuries insofar as the injury is treated as a personal injury under non-bankruptcy law." Toste v. Smedberg (In re Toste), 2014 Bankr. LEXIS 3441, at *8-*9 (B.A.P. 9th Cir. Aug. 12, 2014). The First Circuit has not weighed in on the matter. It is unnecessary to decide the issue here, however, given that Mr. Cofresi's damages in this case resulted from personal bodily injury, thus satisfying even the narrowest reading of the statute.

"Willful or Malicious Injury"

There are very few cases construing the meaning of "willful or malicious injury" under section 1328(a)(4), which was added to the Code relatively recently as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. And, neither "willful" nor "malicious" are defined by the Code. But, those terms do appear in section 523(a)(6), which excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). So, courts interpreting section

9

1328(a)(4)have looked to this provision, which has been the subject of much litigation, to shed light on the meaning of those terms. B.B. v. Grossman (In re Grossman), 538 B.R. 34, 39 (Bankr. E.D. Cal. 2015) ("[n]othing suggests that Congress intended that the terms 'willful' and 'malicious' should have different meanings within the same statute."); see, e.g., Ang, 589 B.R. at 177-78; Woods v. Roberts (In re Roberts), 431 B.R. 914, 919-22  (Bankr. S.D. Ind. 2010). That being said, there are two distinctions between the statutes worth noting: section 1328(a)(4) does not apply to injuries to property, and because it uses the disjunctive, it only requires that an injury be "willful" or "malicious," not both.

In Kawaauhau v. Geiger, the United States Supreme Court significantly narrowed the definition of "willfulness" under section 523(a)(6). Overruling prior decisions holding that the willfulness prong could be satisfied without proving that the debtor acted with the intent to cause an injury, the Supreme Court held that a willful injury requires "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998).  The Court explained that "[i]ntentional torts generally require that the actor intend 'the consequences of an act,' not simply 'the act itself.'" Id. (citing Restatement (Second) of Torts § 8A).   "In light of the Supreme Court's citation to the Restatement (Second) of Torts, courts have concluded that the Supreme Court meant the willfulness element to include actions intentionally done and known by the debtor to be 'substantially certain to cause injury.'" Hermosilla v. Hermosilla (In re Hermosilla), 430 B.R. 13, 22 (Bankr. D. Mass. 2010) (footnotes omitted).

As to the meaning of "malicious," prior to Geiger the United States Court of Appeals for the First Circuit defined the term as "an act done in conscious disregard of one's duties.  No

10

special malice toward the creditor need be shown." Printy v. Dean Witter Reynolds, Inc., 110

F.3d 853, 859 (1st Cir. 1997). The Printy court went on to state:

> An injury to an entity or property may be a malicious injury within this provision if it was wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will . . . . The malice element of section 523(a)(6) requires an intent to cause the harm, and the fact that the injury was caused through negligence or recklessness does not satisfy that standard of proof.

Printy v. Dean Witter Reynolds, Inc., 110 F.3d 853, 859 (1st Cir. 1997) (quoting 4 Collier on

Bankruptcy ¶523.12 (Lawrence P. King, et al., eds., 15th ed. 1996)) (footnotes omitted).

Following Geiger, courts have grappled with defining "malicious" under section

523(a)(6), since there appears to be a significant overlap between the definitions of "willful"

and the traditional notion of implied malice. See McAlister v. Slosberg (In re Slosberg), 225

B.R. 9, 22 (Bankr. D. Me. 1998)("In re Geiger's definition of willful, however, does play havoc

with the long-accepted concept of 'implied malice' under § 523(a)(6). That is so because,

historically, implied malice has been a concept encompassing much of what is now pertinent

only to the issue of willfulness"); see Jonathon S. Byington, Debtor Malice, 79 Ohio St. L.J. 1023,

1046 (2018) (tracing different circuits' approaches to defining maliciousness under section

523(a)(6) following the Geiger decision).

The First Circuit, though, continues to apply the Printy standard post-Geiger. See Old

Republic Nat'l Title Ins. Co. v. Levasseur (In re Levasseur), 737 F.3d 814, 818 (1st Cir. 2013)

(citing Printy). As one court in this circuit has recently clarified, "[m]alice thus has both

objective and subjective elements: the injury must have been objectively wrongful or lacking

in just cause or excuse; and the debtor must have inflicted the injury in 'conscious disregard'

of her duties, meaning that she has to have been aware that the act was wrongful or lacking

11

in just cause or excuse." <u>Whittaker v. Whittaker (In re Whittaker)</u>, 564 B.R. 115, 149 (Bankr. D. Mass. 2017) (citing <u>Levasseur</u>).

Nevertheless, questions remain as to what level of wrongful conduct is necessary for a finding of malice. "In the absence of personal animus, it is not entirely clear, however, what type of wrongful conduct rises to [the] level of being 'malicious' within the meaning of" section 523(a)(6) or, by extension, section 1328(a)(4). 4 <u>Collier on Bankruptcy</u> ¶523.12[2] (Richard Levin & Henry J. Sommer, eds., 16th ed.). While courts have approached the issue a number of different ways, this court is persuaded that the best approach is to look to the totality of the circumstances in order to identify "aggravating circumstances to warrant the denial of a discharge." <u>Forrest v. Bressler (In re Bressler)</u>, 387 B.R. 446, 455 (Bankr. S.D.N.Y. 2008) (citation omitted) (noting "[s]uch a review of the case's circumstances is perhaps made even more necessary due to the 'surprisingly little judicial and scholarly commentary discussing the degree or nature of 'wrongfulness' that constitutes 'malice' under' section 523(a)(6).") (citation omitted). As stated by the Court of Appeals for the 8th Circuit:

> if malice, as it is used in § 523(a)(6), is to have any meaning independent of willful it must apply only to conduct more culpable than that which is in reckless disregard of creditors' economic interests and expectancies, as distinguished from mere legal rights. Moreover, knowledge that legal rights are being violated is insufficient to establish malice, absent some additional "aggravated circumstances," . . . .

Barclays American/Business Credit, Inc. v. Long (In re Long), 774 F.2d 875, 880-81 (8th Cir. 1985). <u>See</u> <u>Landry v. Dunlop (In re Dunlop)</u>, 2006 BNH 50, at *19-*20 (Bankr. D.N.H. Dec. 27, 2006) (applying <u>Long</u>'s "aggravating circumstances" test) (unreported); <u>see also</u> Byington, <u>Debtor Malice</u>, 79 Ohio St. L.J. at 1053-55 (arguing that only an "extraordinarily wrongful act" should meet the "malice" requirement under section 523(a)(6), since "[f]rom a policy

perspective, an exception to discharge should not be interpreted in a way that results in the exception applying to all debts.").

## VI. Discussion.

In his motion for summary judgment, Mr. Velez argues that the Puerto Rico court's finding that he acted with "gross and reckless negligence" does not meet the "willful or malicious injury" standard under section 1328(a)(4), and that Mr. Cofresi is precluded by collateral estoppel from re-litigating the issue in the bankruptcy court. (Adv. Dkt. No. 15 at p. 7; Adv. Dkt. No. 28 at p. 2.) Mr. Cofresi argues that the facts of the case, and the judgment in his favor, do support a finding that Mr. Velez acted willfully or maliciously. (Adv. Dkt. No. 22.) The court will first address the collateral estoppel issue before analyzing whether the facts of the case meet the "willful or malicious injury" standard of section 1328(a)(4).

Collateral Estoppel

Under the full faith and credit statute, a state-court judgment has the same preclusive effect in bankruptcy court as in that state's court. 28 U.S.C. § 1738. "The doctrines of res judicata and collateral estoppel under both federal and state court jurisprudence preclude relitigation of claims and/or issues which have been or could have been litigated in a prior judicial action for which judgment has been rendered." Sistemas Integrados De Salud Del Suroeste, Inc. v. Medical Educ. & Health Servs. (In re Medical Educ. & Health Servs.), 474 B.R. 44, 54 (D.P.R. 2012) (quoting Muñoz Rivera, et al. v. Walgreens Co., et al., 428 F. Supp.2d 11, 19 (D.P.R.2006)). "[O]nce a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving

a party to the prior litigation." Medical Educ. & Health Servs., 474 B.R. at 54 (quoting United States v. Mendoza, 464 U.S. 154, 158, 104 S. Ct. 568, 78 L. Ed. 2d 379 (1984)).

"Res judicata applies when the following exist: '(1) a final judgment on the merits in an earlier proceeding, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two actions.'" Gonzalez-Pina v. Guillermo Rodriguez, 407 F.3d 425, 429 (1st Cir. P.R. 2005) (quoting Breneman v. United States ex rel. F.A.A., 381 F.3d 33, 38 (1st Cir. 2004)). Collateral estoppel applies in bankruptcy dischargeability proceedings. And, "for collateral estoppel to apply, three factors must be present: 'there must be an identity of issues; the prior proceedings must have resulted in a final judgment on the merits; and the party against whom collateral estoppel is sought must be the same as or in privity with the party in the prior proceeding'". Read & Lundy, Inc. v. Brier (In re Brier), 274 B.R. 37, 43 (Bankr. D. Mass. 2002) (quoting George v. Fadiani, 772 A.2d 1065, 1067-68 (R.I. 2001)).

Here, Mr. Cofresi is the plaintiff and Mr. Velez is a defendant in both the local court lawsuit and this adversary proceeding. The state court judgment, however, is not a final judgment. It is a partial judgment, since it does not adjudicate all claims against all defendants and does not contain the requisite language necessary to make a partial judgment final.[3] P.R. Laws Ann. tit. 32 Ap. V, R. 42.3 ("no existe razon para posponer que se dicte sentencia").

Furthermore, there is not "sufficient identicality between the causes of action asserted in the earlier and later suits" for collateral estoppel to apply. The legal standard governing the

---

[3]/The cause of action against co-defendant Caridad Ovalles de Velez was stayed due to her filing for bankruptcy. (Adv. Dkt. No. 32-1 at p. 2.)

14

adversary proceeding is the "willful or malicious injury" standard under section 1328(a)(4), which has been explained above. The local court case was decided under article 1802 of the Civil Code, which governs tort liability under Puerto Rico law. This provision provides, in part: "A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." P.R. Laws Ann. tit. 31, § 5141.

The Puerto Rico statute is much broader than section 1328(a)(4), and a finding that the debtor acted with "gross and reckless negligence" under Puerto Rico's tort statute is not sufficient to determine conclusively whether or not the debtor meets either prong under the "willful or malicious injury" standard.[4] See Geiger, 523 U.S. at 64 ("debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)."); Oregon Ford, Inc. v. Claburn, 89 B.R. 629 (N.D.Ohio 1987)(reversing bankruptcy court's determination that debt arising from an auto accident that resulted from debtor's violation of reckless driving statute was non-dischargeable under § 523(a)(6)); Printy, 110 F.3d at 859 ("[t]he malice element of section 523(a)(6) requires an intent to cause the harm, and the fact that the injury was caused through negligence or recklessness does not satisfy that standard of proof." ); People v. De Jesus Colon, 119 P.R. Dec. 482 (1987) ("[o]bviously, 'gross or willful negligence' and 'malice' are not synonyms.")(citation omitted); Dungan v. Barnes, 2011 U.S. Dist. LEXIS 134898, at *42-*43 (E.D. Cal. Nov. 21, 2011) ("[t]hough [the definitions of gross negligence and implied malice] bear a general similarity, they are not identical. Implied malice

---

[4] "Puerto Rico tort law does not recognize a specific civil cause of action for intentional or grossly negligent acts. All extracontractual responsibility is governed by the fault or negligence standard under section 1802 of the Civil Code, 31 L.P.R.A. § 5141." Benito-Hernando v. Gavilanes, 849 F. Supp. 136, 140 (D.P.R. 1994).

15

contemplates a subjective awareness of a higher degree of risk than does gross negligence, and involves an element of wantonness which is absent in gross negligence.")(citation omitted); Thorndike v. DaimlerChrysler Corp., 2003 U.S. Dist. LEXIS 8203, at *19-20 (D. Me. May 15, 2003) (neither gross negligence or recklessness meet the implied malice standard under Maine law). See also McKinstry v. Chappell, 2014 U.S. Dist. LEXIS 153629, at *70 (E.D. Cal. Oct. 28, 2014) (in the context of second-degree murder, court stated "[a] finding of implied malice depends upon a determination that the defendant actually appreciated the risk involved, i.e., a subjective standard. It is the 'conscious disregard for human life' that sets implied malice apart from gross negligence.") (citation omitted).

Accordingly, the court finds that collateral estoppel is not applicable in this case.

"Willful" or "Malicious" Injury

Here, there is no allegation that the debtor intentionally caused the plaintiff's injuries; the parties agree that Mr. Velez simply lost control of the vehicle. Under section 1328(a)(4), absent a deliberate injury or personal animus, a plaintiff must prove that the debtor acted willfully, meaning here with substantial certainty that his actions would cause the injuries to the plaintiff, and/or maliciously, meaning that the "act [was] done in conscious disregard of one's duties" and was "wrongful and without just cause or excuse." Hermosilla v. Hermosilla (In re Hermosilla), 430 B.R. 13, 22 (Bankr. D. Mass. 2010); Old Republic Nat'l Title Ins. Co. v. Levasseur (In re Levasseur), 737 F.3d 814, 818 (1st Cir. 2013).

Regarding willfulness, courts have set a high bar to meet the "substantially certain" standard following Geiger. In Guthrie v. Kokenge (In re Kokenge), 279 B.R. 541 (Bankr. E.D. Tenn. 2002), the bankruptcy court granted the defendant's motion for summary judgment

16

under section 523(a)(6) for failure to establish the "willfulness" of the debtor's conduct.  The

court stated:

> The Plaintiffs ask the court to infer, from the "outrageousness" of the Debtor's driving, that he "willfully" wrecked his car and caused injury to the Plaintiffs. However, their evidence, if believed in full, shows only that the Debtor intentionally drove his car in an irresponsible and unjustified manner at high speeds while intentionally racing on a winding mountain road.  There is not one shred of evidence, however, supporting the material point at issue–that the Debtor intended to (or believed it was "substantially certain" that he would) injure the Plaintiffs by wrecking his car.
>
> In sum, the Plaintiffs' evidence points to but one reasonable conclusion– that the Debtor acted recklessly.

Guthrie v. Kokenge (In re Kokenge), 279 B.R. 541, 544 (Bankr. E.D. Tenn. 2002).

Likewise, in Tso v. Nevarez (In re Nevarez), 415 B.R. 540, 546 (Bankr. D.N.M. 2009), the

court, citing to Kokenge, echoed the difficulty of satisfying the "substantially certain" test,

stating:

> even though it seems reasonable to expect that an accident is likely to occur when a driver speeds [in excess of 10 miles per hour faster than the posted speed limit] and runs a red light, Plaintiff has presented no evidence that Defendant knew the harm to Plaintiff was substantially certain to occur.  Thus, even under the substantial certainty standard, Plaintiff has not raised a genuine issue of material fact that would defeat Defendant's Motion. . . .  Finding that the debt at issue is non-dischargeable based on an inference that the Defendant knew or should have known that his reckless driving would result in injury inappropriately expands the scope of non-dischargeability under 11 U.S.C. § 523(a)(6) to include acts of negligence under an objective, reasonable person standard.

Tso v. Nevarez (In re Nevarez), 415 B.R. 540, 546 (Bankr. D.N.M. 2009).

Here, too, the plaintiff does not meet the requirements for establishing "willfulness"

under section 1328(a)(4).  The facts on the summary judgment record are that the debtor was

speeding while driving late at night on a spare tire, and that his vehicle left the road and struck

17

a number of vehicles and pedestrians gathered on the shoulder with such force as to ultimately flip his own vehicle.   Driving conditions at the time of the incident were good: the road was dry, traffic was light, and the long straightaway leading up to the parked vehicles was well illuminated.  Mr. Velez admitted at the scene that he had fallen asleep at the wheel.   Taken together, these facts show that Mr. Velez acted recklessly, but do not support a finding that Mr. Velez either intentionally caused Mr. Cofresi personal injury or knew that such injury was substantially certain to occur based on his conduct.  The good driving conditions at the time of the incident, in fact, cut against a finding that Mr. Velez acted "willfully," since it less likely that Mr. Cofresi knew that his reckless driving would result in personal injury given the favorable driving conditions. While it is undoubtedly a high bar, the plaintiff would essentially have needed to show that the road at the time of the incident was so congested with people or people in vehicles(since property damage is not covered by the statute) as to make personal injury a substantial certainty.

As to malice, Mr. Cofresi has not identified, nor does the summary record establish, any "aggravating circumstances" supporting a finding that Mr. Velez's conduct was malicious. Bressler, 387 B.R. at 455.  While the Puerto Rico court found that Mr. Velez acted with "gross and reckless negligence," the First Circuit in Printy made clear that malice requires "an intent to cause the harm, and the fact that the injury was caused through negligence or recklessness does not satisfy that standard of proof."  Printy, 110 F.3d at 859 (citations omitted).  Mr. Cofresi has not met this burden.

Looking at the facts in the light most favorable to Mr. Cofresi, he has not established a genuine issue of material fact as to whether Mr. Velez's conduct was either "willful"or

18

"malicious" under the section 1328(a)(4) standard. Summary judgment, therefore, should be granted in favor of the defendant, Mr. Velez.

## VII. Conclusion.

In view of the foregoing, the court grants the motion for summary judgment filed by Mr. Velez at docket number 15 and denies the motion for summary judgment filed by Mr. Cofresi at docket number 22. A separate judgment shall be entered.

SO ORDERED.

In Ponce, Puerto Rico, this 18th day of June, 2020.

Edward A. Godoy
U.S. Bankruptcy Judge